53 CCPA
**Application of Friedrich HEBBERLING.**
**Patent Appeal No. 7566.**

United States Court of Customs and Patent Appeals.
March 17, 1966.

Smith, J., dissented.

Jack M. Wiseman, San Jose, Cal., for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.[*]

MARTIN, Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection, as unpatentable over the prior art, of claims 1, 2, 17 and 25 of Hebberling application serial No. 80,477, filed January 3, 1961, entitled "Reinforced Sheet Material and Method of and Apparatus for Forming Same." Two claims stand allowed.

Claims 2 and 25 are representative and read:

2. A high speed reciprocating apparatus for imparting a cyclical motion to strands of filamentary material to produce a reinforced web material comprising a first carrier, a guide member carried by said first carrier for movement therewith and arranged to receive strands of filamentary material, means connected to said first carrier for imparting a reciprocating movement to said first carrier, a second carrier disposed adjacent to and in parallel relation with said first carrier, a guide member carried by said second carrier for movement therewith and arranged to receive strands of filamentary material, and means interengaging said first and second carrier and actuated by said first carrier for imparting a reciprocating movement to said second carrier to move said second carrier in a direction opposite from which said first carrier moves.

25. A method of forming reinforced sheet material comprising the steps of, continuously advancing spaced apart sheets of material, continuously advancing continuous strands of reinforcing material between confronting surfaces of said sheets of material, applying adhesive material to said strands of reinforcing material, guiding said sheets of material to converge toward one another with the confronting surfaces thereof meeting, imparting a cyclic motion to said continuous strands of reinforcing material with the adhesive material applied thereto, depositing said strands with adhesive material applied thereto between said sheets of material as the confronting surfaces of said sheets of material meet, and pressing said sheets of material toward one another with the strands of reinforcing material therebetween to form a reinforced sheet material.

Claims 1 and 17 are apparatus claims to the same combination as claim 2 but are somewhat broader in their recitation of the "guide members" and the element designated "means interengaging * *" in claim 2.

As is apparent from the representative claims, appellant's application relates to an apparatus and process for forming reinforced sheet material made up of two flat sheets of material secured together with continuous reinforcing strands of filamentary material disposed therebetween. In forming the reinforced material, a plurality of reinforcing strands are drawn from supply packages on spindles through a comb guide to assume a predetermined spaced relationship in a horizontal plane. The strands may then be passed over a heated roll after which they are received by a reciprocating apparatus disposed at the height of the confronting surfaces of a pair of vertically aligned nip rolls that rotate

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

on horizontal axes and receive two sheets of sheet material therebetween. The reciprocating apparatus imparts to each reinforcing strand a predetermined cylical motion, preferably a sinusoidal motion. As the two sheets approach and converge at the nip rolls, the reinforcing strands, positioned in accordance with the cyclical motion imparted to them by the reciprocating apparatus, are deposited between the confronting surfaces of the sheets. The nip rolls prevent any slippage of the strands once they have been deposited between the sheets. The heated roll over which the strands are passed brings them to a temperature of 150 to 500 degrees F. which is sufficient to cause the strands to be heat bonded to both sheets of sheet material [1] at the nip rolls so that the sheets with the strands therebetween advance beyond the rolls as united reinforced sheet material.

In one modified form of the apparatus, the reinforcing strands, instead of being heated, are passed over a roll which applies a suitable adhesive bonding chemical to them before they are received by the reciprocating apparatus and pass between the individual sheets into the nip rolls.

The reciprocating apparatus defined in appealed claims 1, 2 and 17 is illustrated adequately by part of Fig. 4 and Figs. 5 and 6 of the application drawings, reproduced below:

The apparatus includes a pair of guide bars 126 and 131 mounted ahead of the nip rolls for reciprocating movement in opposite directions along a line perpendicular to the path of the reinforcing threads. The bars, which may be of graphite, have serrated edges 127 and 132 opening into strand or fiber receiving

1. The sheet material may be "made of fibrous or plastic substances."

slots 128 and 133, respectively. The reciprocating bars impart a preferably sinusoidal motion to the strands as they are continuously advanced into the nip rolls.

The means for mounting and driving the bars 126 and 131 includes an elongated stationary support member 100 of inverted U-shaped cross-section, a first carriage member 101 of similar cross-section mounted within the member 100 for reciprocal longitudinal movement therein on ball bearings 102, and a second carriage member 104 of rectangular cross-section in turn mounted in member 101 for reciprocal longitudinal movement therein on ball bearings 105. Guide bar 126 is secured to the first carriage member 101, with its serrated edge up, by a bracket 125, while a bracket 130 secures guide bar 131 to the second carriage 104 with its serrated edge down. Gear racks 120 and 121 are secured to the outer ends of carriages 101 and 104, respectively, in spaced opposed relationship so that their teeth engage a pinion 121a supported therebetween for rotation about a fixed axis. At its inner end, the carriage 101 has attached thereto a slide plate 107 provided with an elongated transverse slot 108. That slot receives a follower roller 109, which roller is driven through repeated cycles of sinusoidal motion through an eccentric drive from the rotating shaft of a motor.

Appellant describes the operation of the reciprocating means in his application as follows:

During each cycle of sinusoidal motion of the follower roller 109, longitudinal movement is imparted to the outer carriage 101, which, in turn, moves the guide bar 126 longitudinally therewith. The longitudinal movement of the carriage 101 drives the inner carriage 104 longitudinally in an opposite direction through the pinion 121a. Consequently, the guide bar 131 moves longitudinally in a direction opposite from which the guide bar 126 is travelling. Thus, the guide bars 126 and 131 are always 180° out of phase. Each guide bar 126 and 131 is substantially equal in length to the width of either sheet material 23a or 23b and completes a reciprocating cycle during each cycle of sinusoidal motion of the follower roller 109.

The references relied on by the Board of Appeals are:

| | | |
|---|---|---|
| Chadwick | 1,914,801 | June 20, 1933 |
| Mercer | 2,919,467 | Jan. 5, 1960 |
| Benbow | 627,968 | July 4, 1899 |
| Caretta | 2,026,459 | Dec. 31, 1935 |

Chadwick discloses a machine for making reinforced sheet material such as composite paper that is reinforced by threads of fibrous material incorporated between two webs of paper which are secured together by an interposed adhesive film. The patent states:

* * * the thread reenforcement comprises a series of substantially straight spaced threads which run lengthwise of the web or sheet, and two series of spaced zig-zag threads, which extend lengthwise of the web or sheet in zig-zag courses with each of the zig zag threads of one series crossing or intersecting several of the zig zag threads of the other series and also several of the straight threads.

* * * * * *

In the machine herein disclosed to illustrate my invention as usual in machines for producing reenforced material of the sort mentioned, two continuous webs of sheet material, such as paper, are caused to travel between presser rollers, an adhesive coating is applied to the inner surface of one or both of these traveling webs before it passes between the presser rollers, and

thread guiding or laying means are also provided for introducing the reenforcing threads between the two traveling webs as they enter the bite of the presser rollers so that the threads will stick to the adhesive coating and be drawn with the webs between the rollers which press the two webs together, the webs being thus cemented together and the reenforcing threads cemented in place between the webs.

The pertinent features of the guide means employed by Chadwick to impart the desired displacement to the threads as they enter the sheets are illustrated in Fig. 6 reproduced below:

As shown in the drawing, a stationary beam 30, extending transversely of the machine in advance of the presser or nip rollers, is provided with three vertically spaced horizontal layers of orifices which receive threads from supply bobbins. Ahead of the beam 30 and just in advance of the rollers is a stationary bar 31 and upper and lower reciprocating bars 32 and 33. Stationary bar 31 guides threads passing therethrough so that they assume a position parallel to the direction of travel of the sheets of material and that bar is of no further pertinence here. The reciprocating bars 32 and 33 have openings therein connected through flexible rubber tubes with corresponding openings in top and bottom rows of openings in the beam 30

One end of the upper reciprocating bar 32 extends into a stationary guide box 42 and has rack teeth 47 on its lower edge for engagement with a pinion 46 in the box. The pinion also is engaged by teeth on a vertical rack bar 52 so that vertical reciprocating motion imparted to that bar will cause horizontal reciprocating motion of the bar 32. The opposite end of the lower guide bar 33 has teeth on its edge engaging another pinion driven by another rack bar which may be vertically reciprocated to cause horizontal reciprocating motion of that bar also. The two rack bars are driven from a common driving shaft by eccentric members arranged to cause the bars 32 and 33 to be driven simultaneously in opposite directions to cause a zig-zag configuration of the threads guided thereby as the threads pass into the rollers between the two sheets of material.

The Benbow and Caretta patents each show a mechanism wherein two parallel, longitudinally movable members are provided with teeth in facing edges in engagement with a pinion rotatable on a fixed axis located therebetween so that imparting a reciprocating motion to one

member causes reverse reciprocating movement of the other member. In Benbow that mechanism is employed in a washing machine, while Caretta is directed to a general disclosure of transmission gearing.

The examiner rejected apparatus claims 1, 2 and 17 as unpatentable over Chadwick. The board affirmed that rejection as to claim 17 but reversed it as to claims 1 and 2. It made a new rejection, under Rule 196(b), of claims 1 and 2 as unpatentable over Chadwick in view of either Benbow or Caretta and adhered to such rejection on reconsideration.

It was the position of the board that the structure recited in claims 1 and 2 is met by Chadwick except for the specific means for reciprocating the two carriers for the guide members and that it would be obvious to substitute well known mechanism for causing reverse reciprocation of two bars by means of a pinion interengaging racks on the two bars, as shown by Benbow and Caretta, for the carrier driving and reversing means of Chadwick.

Appellant argues:

\* \* \* there is no suggestion or teaching in the art relied upon whether taken singly or in combination of the inventive concept of establishing an intimate correlation between the cyclic motions applied to strands of filamentary material, whereby the movement of the first carrier, which applies a cyclic motion to a first group of strands, activates the force transmitting means to impart a reciprocating movement to the second carrier, which applies a cyclic motion to a second group of strands. More significantly, the disclosure by Benbow does not suggest employing the racks and pinion thereof for establishing a time or phase relation between the agitators rotated thereby. Similarly, the disclosure by Caretta fails to suggest employing the racks and pinion thereof to establish a phase or time relationship between elements driven therefrom.

It cannot be argued that Chadwick fails to disclose the same concept of "an intimate correlation between the cyclic motions applied to the strands of filamentary material" that appellant employs. The guide bars 32 and 33 of Chadwick are interlocked through a common drive shaft so that they are "simultaneously reciprocated oppositely" transversely of the machine. It is true that Chadwick does not use a force transmitting means driven from the first driven means to drive the second to accomplish that result. However, Benbow and Caretta show it is an old expedient to simultaneously reciprocate two driven members from the same source of power by driving one .directly from the source and using a rack and pinion structure like that of appellant to drive the other. Since Chadwick's driving arrangement and that of the secondary references both provide the same function of driving the driven members from a single power supply with the same reverse reciprocating motions, we think it would clearly be obvious to a person of ordinary skill in the art to which the present invention is directed to substitute the drive arrangement of the secondary references in Chadwick's machine.

The decisions in In re Ratti, 270 F.2d 810, 46 CCPA 976, and In re Shaffer, 229 F.2d 476, 43 CCPA 758, relied on by the appellant, are not considered controlling here. In each of those cases, the court concluded that the modification of the basic reference relied on in the rejection reversed by it was not made obvious by the prior art. In the present case, we find nothing which satisfies us that the substitution suggested in the rejection of claims 1 and 2 would not have been obvious or provides any unobvious result. Appellant contends that his drive arrangement offers advantages because "the phase relationship between the carriers is intimately correlated regardless of wear, tear and setting of the drive mechanism" and because the arrangement, by reducing the number of parts required, "has reduced the oscillat-

ing mass to a large degree." However, we find no sound reason for doubting that a person of ordinary skill in the art would have been aware of any such characteristics of the drive arrangement of Benbow and Caretta as might provide those results and of the effects of substituting that arrangement in place of the Chadwick driving means.

Claim 17 differs from claims 1 and 2 in reciting "means * * * connected to said first carrier for imparting a reciprocating movement to said first carrier" and for "reversal means interconnecting said first and second carriers for imparting a reciprocating movement to said second carrier * * *." The board regarded that language as making claim 17 broader than the other two claims and considered claim 17 unpatentable over Chadwick without finding it necessary to rely on the secondary references.

Appellant seems to argue that claim 17 should be regarded as requiring that the first carrier drive the second carrier even though that condition is not expressly recited. That interpretation, would appear to give claim 17 the same substance as claim 2. However, we agree with the board that claim 17 is broader and was properly rejected on Chadwick alone. While applying the terms of claim 17 to Chadwick involves inclusion of a common portion of the Chadwick drive means in both the "means connected * * *" and the "reversal means * * *" expressions set out above, we think that reading those expressions on the reference disclosure involves no more than a reasonable interpretation of the claim language. See In re Kelley, 305 F.2d 909, 49 CCPA 1359.

Regarding claim 25, rejected as unpatentable over Chadwick, appellant states:

> Method claim 25 distinguishes over the process disclosed by the patent to Chadwick in that it calls for the steps of applying adhesive material to strands of reinforcing material and imparting a cyclic motion to the strands of reinforcing material with the adhesive material applied thereto.

The examiner and board recognized that Chadwick applies adhesive to the sheet material rather than the strands but thought it would be obvious to follow the latter procedure. Although appellant argues there are some advantages to applying the adhesive to the strands, we do not think that either the procedure or the asserted advantages would be unobvious to a person of ordinary skill in the art.

Since we think, for the foregoing reasons, that the board was correct in finding the appealed claims unpatentable, the decision is affirmed.

Affirmed.

SMITH, Judge (dissenting).

The majority finds that the reciprocating apparatus defined in the appealed claims would be obvious to one of ordinary skill in the art. I disagree with this finding and dissent for the following reasons.

Appellant in his brief states the case as I see it. He says:

> In support of applicant's contention that the reciprocating apparatus of the present invention is patentably distinct over the art of record, applicant points out that the following advantages flow from and are gained by the novel arrangement defined in claims 1 and 2:

> 1. By having the reciprocating movement of one carrier activate the force transmitting means to reciprocate another carrier, the phase relationship between the carriers is intimately correlated regardless of the wear, tear and setting of the drive mechanism. By virtue of the present invention, there is a precise and accurate phase relationship between adjacent strands of filamentary material to produce an improved and stronger reinforcing matrix.

> 2. By reducing the number of parts required, applicant has reduced the oscillating mass to a large degree. Consequently, applicant's machine attains

greater operating speed with less power. This is significant, because the limiting factor in the speed of operation of the overall machine and the output of the reinforced sheet material is the reciprocator speed. Therefore, it is not just a matter of reducing parts, but more important it is a matter of output and speed of operation.

The majority opinion states that one of ordinary skill in the art would find these improved results to be obvious in view of the drive arrangement of Benbow and Caretta and concludes there is "no sound reason for doubting that a person of ordinary skill in the art" would be unaware of substituting these driving arrangements in Chadwick.

This reasoning involves a non sequitur. It is beyond question that the drive arrangement of Benbow and Caretta is *not* the same as that employed by appellant. Appellant clearly explains in his brief that:

> One carrier is driven directly by a drive mechanism and imparts a cyclical motion to strands of filamentary material. However, the other carrier is driven by the reciprocating movement of the first carrier. Stated otherwise, it is the movement of the first carrier which activates interengaging reversal means located between the first and second carriers that causes the reciprocating movement of the second carrier.

Benbow and Caretta, in contrast, utilize a pinion common to two racks to cause movement between the two racks. In Benbow, two washing machine agitators operate simultaneously. In Caretta, movement is transmitted to a remote element via parallel racks.

Thus, substituting the drive arrangements cannot *in fact* produce a mechanism capable of providing the improved results of appellant's claimed arrangement. Appellant's unique arrangement of the parts produces a result of apparent merit in that it:

1. correlates the phase relationship between the carriers regardless of wear and the setting of the drive mechanism;

2. maintains precise and accurate phase relationship between adjacent strands of filamentary material to produce an improved and stronger reinforcing matrix;

3. reduces the number of parts required and lessens the mass of the oscillating parts;

4. provides greater operating speed with less power;

5. results in greater output in reinforced sheet material.

The appealed claims define a machine and method which are new in this art and which permit improved results of substantial merit, all of which would not be mechanically possible from any combination of the prior art teachings. Considering all of the teachings of record, I fail to see how such a machine and method can be found to be obvious to one of ordinary skill in the art when the statutory tests of 35 U.S.C. § 103 are applied. I find that section 103 is not applied to the true fact situation before the court.

As the majority decision rests, as does the opinion of the board, on what I believe to be the erroneous factual conclusion that the substituted prior art drive arrangements would in fact function as does appellant's claimed invention to produce the improved results first taught by appellant, the decision of the board should be reversed.