56 CCPA

**Application of James A. UMBARGER.**
**Patent Appeal No. 8098.**

United States Court of Customs and Patent Appeals.
March 6, 1969.

(John K. McCulloch, Saginaw, Mich., of counsel) Learman, Learman & McCulloch, Saginaw, Mich., for appellant.

Joseph Schimmel, Washington, D. C., (Jere W. Sears, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

ALMOND, Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of the only remaining claims, numbered 31 through 42, in appellant's application entitled "Ignition Analyzing Tachometer Including Ferrite Inductive Connector Means."[1]

The invention relates to a tachometer for operation from the ignition system of an internal combustion engine to indicate engine speed. One embodiment of the device is illustrated in Fig. 1:

FIG. 1

The illustrated apparatus is adapted for use with an internal combustion engine wherein an electrical conductor 4 connects one of the spark plugs 1 with one of the contacts 5 of the engine distributor 6. The distributor includes a conventional rotor 7 which is driven to engage each of the contacts 5 in turn to energize the spark plugs in sequence. Connected to the rotor 7 is a high tension conductor 8 energized from the secondary winding of the engine ignition coil.

Appellant's apparatus is operatively associated with the engine by threading the spark plug conductor 4 through an annular core 13 which is described as quickly magnetizable and demagnetizable and may be made from certain ceramic-base magnetic materials known as ferrites. An induction winding 12 is wound on the core and a circuit 9 made up of a half-wave rectifier 10 and a capacitor 11 in series is connected across the winding. A "headset" or set of headphones H is connected in parallel circuit with the capacitor.

Appellant points out that the occurrence of a spark across the electrodes of the spark plug in the arrangement of Fig. 1 will result in a pulse of current flowing through the conductor 4 to induce in winding 12 a voltage which in

1: Serial No. 38,147 filed June 23, 1960.

turn will cause current to flow through circuit 9 including the rectifier 10 to charge the capacitor 11. Upon cessation of the induced current flow in the circuit 9, the capacitor will discharge through the headphones to produce an audible signal. Appellant further states that, "[i]f the spark plug under test fires slowly enough, the audible signal will be heard as pops or clicks and may be counted, thereby permitting the headset to be used as an aural tachometer."

Appellant discloses what he terms a "more sophisticated" embodiment of his invention in Fig. 2 of his drawing. That embodiment employs the same basic pulse responsive circuit made up of a half-wave rectifier in series with a capacitor but connects visual indicating means across the capacitor instead of the headphones H. That means includes a direct current milliameter "calibrated to indicate the rate at which the pulses occur." The modified arrangement employs transformer type coupling means between the pickup coil on the core through which the conductor 4 is inserted and the circuit 9. It also includes a reversible plug connection between the pickup coil and the input winding to that coupling means.

Claims 31, 40 and 41 are representative and read as follows:

31. Analyzing apparatus for an ignition system of the type including a spark discharge device connected in series with a conductor through which current pulses of substantially instantaneous duration periodically flow, said apparatus comprising an electric circuit having current pulse indicating means and an inductive winding and current pulse responsive means composed of magnetic material capable of being magnetized by said current pulses, said current pulse responsive means being inductively coupled to said winding and inductively coupled only to said conductor for inducing pulses in said circuit solely in response to the flow of said substantially instantaneous current pulses through said conductor.

40. A tachometer for measuring the speed of an internal combustion engine having at least one conductor connected in series with a spark discharge device and through which current pulses of substantially instantaneous duration periodically flow, said tachometer comprising a series circuit including a rectifier element, a condenser element, and an inductive winding; an annular ferrite core capable of being magnetized by said current pulses inductively coupled to said winding and adapted for inductive coupling only to said conductor for inducing current pulses in said circuit solely in response to the flow of pulses through said conductor; current pulse indicating means for indicating the number of pulses induced in said circuit per unit of time; and means electrically connecting said indicating means in said circuit only in parallel with one of said elements.

41. Analyzing apparatus for an ignition system of the type including a spark discharge device connected in series with a conductor through which current pulses of substantially instantaneous duration periodically flow, said apparatus comprising a circuit including a rectifier, a condenser, and an inductive winding; a first annular core formed of magnetic material capable of being magnetized by said current pulses and on which said winding is wound; a second annular core similar to said first core and adapted for inductive coupling only to said conductor; inductive means for coupling said cores, said cores and said coupling means being capable of inducing current pulses in said circuit solely in response to the flow of said substantially instantaneous current pulses through said conductor; and pulse indicating means connected to said circuit for indicating pulses therein.

Only certain other claims merit specific mention at this point. Those include claim 34 which recites that the pulse indicating means produces an aural signal, and claim 35 which requires that

such means comprise a current meter. Claim 42 is dependent on claim 41, adding thereto a recitation of a winding on each of the two cores with separable means interconnecting the windings and operable to reverse the connection.

The claims stand rejected under 35 U.S.C. § 103 as obvious in view of the prior art.

The references relied on below are:[2]

| | | |
|---|---|---|
| Stanek | 2,182,324 | December 5, 1939 |
| Byerlay | 2,645,751 | July 14, 1953 |
| Hansel | 2,807,781 | September 24, 1957 |
| Douma | 2,808,566 | October 1, 1957 |
| Horsch | 2,962,657 | November 29, 1960 |
| Siemens and Halske Akt (French patent) | 811,467 | January 18, 1937 |

Considering the references in what we deem the most appropriate order, Horsch discloses an internal combustion engine tachometer illustrated in his Fig. 7 below:

FIG. 7.

The left portion of the figure represents a conventional ignition system including an ignition coil having a primary winding 32 and a secondary winding 33. Upon its energizing circuit being periodically closed at contacts 35, 36 under control of distributor camshaft 37, the primary winding induces current in the secondary winding to send high tension pulses to the spark plugs, such as 34, through the distributor rotor 38. A circuit connected between point 11 and point 12 operates in response to pulses produced at 11 in synchronism with the opening and closing of contacts 35, 36 to provide what are described as "stabilized volt-time area output pulses" at terminal 12. According to the specification, the pulses at the latter terminal are passed through an asymmetrical conducting element which, for example, may consist of the rectifier $D_1$, and are applied to an integrating circuit which may consist of resistor $R_3$ and

2. Cited by the board as additional references, but unnecessary, in our view, to determination of the appeal, are: Laws Electrical Measurements, pages 563–564, published by McGraw Hill Book Company, 1917.

Electronic Measurements, pages 227–229, by Terman and Pettit, 2nd Ed. published by McGraw Hill Book Company, 1952.

capacitor $C_3$. Values of $R_3$ and $C_3$ are chosen to result in an appropriate time constant in a manner well known in the art. The D.-C. voltage at point 31 [the terminal common to $R_3$, $C_3$ and $R_4$] will be * * * directly proportional to the frequency of the applied input pulses. Consequently, a D.-C. meter M connected from point 31 to ground through a resistor $R_4$ may be calibrated to read directly the frequency of the input pulses.

Byerlay relates to a device for presenting a visual representation of the spark plug discharges of an internal combustion engine on the screen of a cathode ray tube. The voltage across either the primary or secondary winding of the ignition coil of the engine is connected to the vertical deflection elements of the tube. A synchronizing pulse pickup device produces pulses corresponding to the discharge of any selected spark plug and applies those pulses to a pulse amplifier which in turn controls a sawtooth wave generator for providing the horizontal deflection potential required to display the shape of the voltage signals applied to the vertical deflection elements on the tube. The pulse pickup device comprises a toroidal core on which a secondary or pickup coil is wound and which is of a size to permit the ignition lead to a spark plug to be passed therethrough. The pickup device is provided with shielding which "prevents stray currents and static discharges of the ignition system from creating false signals in the coil." A transformer couples the circuit of the pickup coil to the input of the pulse amplifier.

The French patent to Siemens and Halske discloses a high frequency measuring instrument inductively coupled to a conductor carrying current to be measured through an annular transformer core carrying a secondary winding. The secondary circuit includes a rectifier in series with a capacitor and a meter in a circuit parallel with the capacitor.

Douma discloses an energy measuring device in which a conductor carrying high frequency energy is inductively coupled to a secondary winding by an annular "Ferrite" core.

Stanek shows a high frequency current meter inductively coupled to the high frequency conductor by an annular magnetic core carrying secondary windings. The latter windings are connected to the meter by a pin and socket connector.

Hansel relates to a frequency analyzing device using "audio-presentation means, such as * * * [a] loud speaker" for audio frequency signals.

Claims 31 to 33 and 35 to 40 were rejected by the examiner as unpatentable over Horsch in view of the French patent 811,467 (Siemens and Halske), Douma and Byerlay "under 35 U.S.C. § 103." The examiner stated that "Horsch discloses a tachometer $D_1$, $C_3$ & M equivalent to the tachometer comprising elements 10, 11, and H of applicant's Figure 1." He also noted that the French patent "shows a frequency sensitive circuit including a meter connected across a capacitor in series with a rectifier, structurally similar to applicant's elements 9, 10, and H of Figure 1 and D [$D_1$], $C_3$ and M of Horsch." The examiner additionally stated:

Byerlay shows that there is no invention in coupling a measuring or detecting circuit to the distributor-spark plug lead in an internal combination [sic] engine by means of an inductive coupling, so that the measuring or detecting circuit is pulsed in synchronism with the distributor rotation and spark firing. It is noted that the Horsch tachometer is also operated by pulses generated in synchronism with the distributor rotation and spark firing. There would be no invention in inductively connecting a tachometer circuit such as shown by Horsch, D[$D_1$], $C_3$ and M to be operated by pulses in the distributor-spark plug lead, as shown by Byerlay. Similarly, the general use of a toroidal coupling means to effect such an inductive coupling of the Horsch tachom-

eter, to any line or conductor is obvious in view of the French patent. The specific use of a ferrite toroid as an inductive coupling element is shown to be conventional by Douma.

In sustaining the rejection, the board observed that the references show that it has long been conventional practice to connect test or analyzing equipment to an electrical circuit by an inductive coupling. It held that, in light of that practice, "it would be obvious to the routineer to connect the test circuit of Horsch inductive[ly] to the lead between 33 and 38 of his Fig. 7." The board further referred to claims 37 to 39 as reciting "a conventional pulse counting circuit" such as is found in Horsch "inductively coupled to a circuit to be tested." Agreement was had with the examiner that the use of ferrite as the magnetic core material would have been obvious in view of Douma.

Claim 34 was regarded by the examiner as unpatentable in further view of Hansel with its disclosure of a loud speaker to give aural signals indicative of frequency, and the board agreed.

The examiner considered claims 41 and 42 unpatentable further in view of Stanek. The board referred to Byerlay in connection with the additional core and windings recited in claim 41 (and dependent claim 42), plainly relying on the transformer coupling between the pickup coil and pulse amplifier circuits there although setting forth an incorrect reference number to identify that element.

Our own consideration of the record in light of the briefs and arguments convinces us that the appealed claims were properly rejected under 35 U.S.C. § 103. In the first place, it is evident that the Horsch tachometer performs the same function of measuring the speed of an internal combustion engine as does appellant's device. It is also apparent that the circuit consisting of the elements $D_1$, $R_3$, $C_3$, $R_4$ and M (hereinafter designated by its basic elements $D_1$, $C_3$ and M) connected to the terminal 12 in Fig. 7 of Horsch measures the frequency of the pulses produced at that terminal as an indication of the speed of the engine. The purpose of the portion of the Horsch circuit between points 11 and 12 is to provide pulses at 12 which correspond in frequency to the spark plug discharge and are particularly suited for providing an accurate indication when their frequency is measured by the circuit $D_1$, $C_3$ and M. Referring to the latter circuit, we fully agree with the examiner that it would be "within the ability of one skilled in the art to link the specific detection circuitry, $D_1$, $C_3$ and M of Horsch, by inductive means, to the connection point shown by Byerlay." In other words, Byerlay employs an inductive pickup including a magnetic core encircling the lead to a spark plug to provide pulses corresponding in frequency to the firing of the spark plug and it would be an obvious alternative to employ such a pickup as the source of pulses to be measured by the pulse-frequency responsive circuit $D_1$, $C_3$ and M of Horsch as an indication of engine speed.

Appellant argues that "disconnecting Horsch's tachometer circuit from the terminal 11 and inductively connecting Horsch's tachometer circuit to the conductor leading to the spark plug 34" would result in a construction that is "inoperable or, at best, operable in a manner not disclosed and not intended by Horsch." He bases that argument on the particular nature of the signals provided at point 11 in Horsch and the specific circuit connected between points 11 and 12 therein. However, the rationale on which we base our analysis of the rejection involves the substitution of inductive pickup means as suggested by Byerlay for the entire pulse-providing means of Horsch including the pulse treating circuit preceding the pulse-frequency responsive circuit $D_1$, $C_3$ and M. It is true that such substitution omits the circuit portion which Horsch apparently regarded as his contribution to the art along with such advantages as it might provide. However, the modified apparatus is clearly obvious in view of the prior art and the retained circuit $D_1$, $C_3$ and M of Horsch will operate therein on the same

principles as before to indicate engine speed as a function of applied pulse frequency.[3] In re Irmsher, 262 F.2d 85, 46 CCPA 761; In re Ratti, 270 F.2d 810, 46 CCPA 976; and In re Lobl, 228 F.2d 234, 43 CCPA 734, cited by appellant, clearly are not authority for holding a rejection improper under such circumstances.

An affidavit advanced as showing that the pulses derived from current passing through a spark plug will not saturate a magnetic core was relied on by appellant in connection with an argument pertaining to Horsch's coil 13. Since that element is eliminated when the references are combined in the manner we find obvious, discussion of that argument is unnecessary.

Appellant argues that the spark current in an ignition system of the kind disclosed is a substantially instantaneous pulse and refers to claim 31 for the recitation of the current pulse responsive means as "composed of magnetic material capable of being magnetized by the substantially instantaneous current pulses." It is plain that such recitation fails to distinguish over the prior art. The inductive pickup of Byerlay responds to the same condition in a spark plug conductor as appellant's construction to produce pulses in the pickup winding and thus obviously and inherently complies with the recitation in the same manner.

Appellant also points out that his current pulse responsive means is defined as inductively coupled *only* to the spark plug conductor for inducing pulses *solely* in response to the current pulses in the spark plug conductor. We think it apparent that the inductive pickup of Byerlay inherently has those characteristics for the same reasons as appellant's device and additionnally note the shielding provided in that reference device to "prevent false signals" in the pickup coil. It is argued in particular that Byerlay does not show connection *only* to the ignition system "inasmuch as a shielded cable 8 is provided for connection to either the primary or secondary of the ignition coil under test for the purpose of controlling vertical deflection of the beam of a cathode ray tube." However, one using the inductive coupling in Byerlay merely for activating a pulse-responsive tachometer circuit would find it obvious to dispense with that reference's additional connection of the ignition coil to the cathode ray tube.

As to the recitation in claims 40 and 42 that the pickup coil is of ferrite, appellant has not shown any error in the position of the examiner and board that the use of that material for the magnetic core of the inductive pickup substituted in Horsch would be obvious to a person of ordinary skill in the art in view of Douma which shows this known material used in an inductive pickup. While appellant's aforementioned affidavit does show that a particular pickup using a core of WO–3 ferrite gave a greater response than certain pickups using cores of certain other materials which were tested, it is not demonstrated that the difference is unexpected or unobvious. Also, appellant states in the application that "[t]he magnetic properties of ferrites vary according to their composition and also according to their particle size, compacting pressure, amount and kinds of binding resins and sintering temperature." He further states that "the best ferrite found to date is WO–3 ferrite * * *." Thus, the affidavit does not support a conclusion that all ferrites are superior to other known magnetic materials for present purposes.

In connection with claim 34, which recites pulse-indicating means comprising a device responsive to the pulses to produce an aural signal, Hansel's disclosure of the

---

3. It is further noted that Horsch states that it has been proposed in the past "to utilize a pulse output derived from the spark coil of the conventional ignition system of an internal combustion engine as a measure of the speed of operation of the engine." However, he regarded such systems "impractical or prohibitively expensive for several reasons" and offered his construction as an improvement thereon.

**432**

use of a loud speaker as an audio-presentation means for signals of audio frequency clearly demonstrates that it would be obvious to use an aural indicator in the modified reference structure.

Claims 41 and 42 recite what is in effect a transformer coupling between the winding on the pickup coil and the pulse-responsive circuit. We agree with the examiner and board that this feature would be obvious to one of ordinary skill in the present art, noting in particular the transformer coupling provided between the pickup coil and the pulse amplifier in Byerlay. We also agree that the use of separable and reversible means between the pickup coil and the input to the remaining test apparatus would be obvious to one of ordinary skill in the art, noting in this case the separable pin connector of Stanek referred to by the examiner.

For the reasons stated above, the decision of the board is affirmed.

Affirmed.