NEWMAN, Circuit Judge, concurring-in-part, dissenting-in-part. I agree with the holding of non-infringement of the ’144 patent, and join the judgment of reversal of the district court’s judgment' of liability with respect to that patent.[1]1 respectfully dissent from my colleagues’ sustaining the validity of the ’144 and ’462 patents, for I believe that the claims in suit would have been obvious to a person of ordinary skill in the field of the invention. The ’144 Patent A. Infringement of claim 41 I agree that infringement of claim 41 of the ’144 patent was not established, in géneral for the reasons that the majority explains. Thus I join the' holding of non-infringement of claim 41, for I agree that substantial evidence did not support the jury’s verdict. I write separately, however, to clarify the holding of Centillion Data Systems, LLC v. Qwest Communications International, Inc., 631 F.3d 1279 (Fed. Cir. 2011). The district court correctly, stated: “Centillion did not hold that the infringer ‘benefit’ from every single limitation. Rather Centillion held that the user must ‘obtain benefit’ from the ‘system as a whole’ and its analysis of (and finding of) benefit was not on a limitation-by-limitation basis.” Dist. Ct. Op. at 422, My colleagues “disagree,” Maj. Op. 1328, stating that: Centillion and NTP held that to-“use” something is to put it into service, which means to control and benefit from it. And Centillion explicitly added that, to use a claimed system, what, must be “used” is each element. From those two propositions, it follows that, to use a system, a person must control (even if indirectly) and benefit from each claimed component. Id. (citations and parenthetical omitted); With respect, my colleagues are incorrect. Centillion does not stand for the proposition that they expound; the district court’s statement of Centillion was not in error. Centillion did not establish a new requirement for infringement whereby a user must benefit from every element of the system. Centillion held that “[b]y causing the system as a whole to perform this processing and obtaining the benefit of the result, the customer has ‘used’ the system under § 271(a).” 631 F.3d at 1285. To infringe a claim, every element of the claim (or its equivalent) must be practiced; but the^ benefit a user receives flows from the claimed system as a whole. It is not a necessary element of proof of infringement, to require proof of benefit from each element and limitation of the claim. The district court correctly so recognized. It is of course required that for infringement every element of the claim must be practiced. However, Centillion does not, require' a showing of individual benefit from every separate element that is included in a claim. See Centillion, 631 F.3d at 1285 (“By causing the system as a whole to perform this processing and obtaining the benefit of the result, the customer has ‘used’ the system under § 271(a).”). This definition of “use” properly captures the scope of infringement for which Centillion stands. It cannot be that a person might be found liable for infringement when the last element of the claimed system does not accomplish the primary purpose of the invention, that is, sending a multimedia text to another. Under Centil-lion, “use” by a party is properly defined as occurring when “but for the customer’s actions, the entire system would never have been put into sendee,” and each claimed component is placed in service on the party’s behalf. Id. Centillion conforms to precedent; the change imposed by my colleagues is unsupported by law. Infringement in this case is a simple determination of whether the Motorola system practices all of the elements of claim 41, not whether the user obtains a benefit from each of the elements of claim 41. The discussion of whether the user benefits from the system’s “generating] a delivery report,” as claim 41 requires, is not the reason infringement is not present. The proper analysis is whether the system is acting at the behest or control of Motorola if a delivery report is generated. It is not disputed that all elements of the claim are not used by or attributable to Motorola. There was not substantial evidence that Motorola intended the generation of the delivery report to occur, nor was there substantial evidence Motorola received a benefit from the report’s generation. Thus I concur in the holding of non-infringement of claim 41, for it was not shown that Motorola’s “use” of the accused system practiced every element of claim 41. B. Validity of claim 41 At the trial Motorola argued that claim 41 was invalid for obviousness in view of the Overend reference taken with the Mi-cali reference. The panel majority states that substantial evidence supports the finding “that Overend’s ‘Receive Mode’ did not satisfy the ‘irrespective of user action’ limitation of claim 41.” Maj. Op. 1327. However, the district court correctly construed the claims to require that a file is received “irrespective of user action,” as long as “the user need not log-in to a server and download the selected file.” J.A. 379. As the majority notes, “Motorola’s expert testified that the ‘Receive Mode’ of Overend’s software allowed a user to receive files without having to ‘log in’ or ‘download’ files.” Maj. Op. 1327. There is no indication that IV’s expert testified to the contrary, although IV’s expert offered the opinion that “ ‘Receive Mode’ was not equivalent to receiving files ‘irrespective of user action.’ ” Id. IV’s argument regarding “Receive Mode” is flawed, for claim 41 does not require the receipt of files to be instantaneous or as they are sent; nor does the claim exclude queuing files in the network for later delivery. The claim limits precisely what the district court construed the claim to limit: a “user need not log-in to a server and download the selected file.” It is this user action that is not permitted to be read into the claim. Allowing the device to receive any queued or subsequent real-time messages is precisely within the scope of receiving files “irrespective of user action.” The Overend reference meets the “irrespective of user action” limitation. Thus all of the elements of claim 41 are shown in Overend, with the exception of the authenticating step. But Micali teaches the authenticating step, describing “an electronic communications method between a first and second party, with assistance from at least a trusted party ... in which the first party has a message for the second party.” Micali, col. 3 11. 54-58. Micali further teaches embodiments in which the second painty sends a “receipt” to the trusted party, and where the trusted party sends a receipt to the first party. Id. col. 7 ll. 4-16; col. 12 ll. 5-32. Based on these teachings, Motorola’s expert testified that Micali’s trusted party and exchanging of receipts satisfied the “authenticating device” limitations of claim 41. The combination of Overend and Micali shows all of the elements of claim. A person of skill in the field of the invention would have found the combination obvious. Although my colleagues state that “the jury was free to disbelieve [Motorola’s] expert and credit [IV’s] expert,” Maj. Op. at 1327 (alterations in original), the court’s obligation is to assure that questions of law are correctly decided, and that for factual disputes, substantial evidence on the record as a whole supports the legal conclusion. The question of law is whether a person of ordinary skill in this art would deem it obvious to combine an authenticating step as in Micali, with the process of Overend. See 35 U.S.C. § 103 (whether “the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.”). Obviousness is determined based on the teachings in the prior art, and whether it would have been obvious to select and combine these teachings. See In re Merck & Co., Inc., 800 F.2d 1091, 1097 (Fed. Cir. 1986) (“Non-obviousness cannot be established by attacking references individually where the rejection is based upon the teachings of a combination of references.”); In re Mouttet, 686 F.3d 1322, 1333 (Fed. Cir. 2012) (“[T]he test for obviousness is what the combined teachings of the references would have suggested to those having ordinary skill in the art.”). Overend shows “transmit[ting] to an authenticating device of the communications network, the delivery confirmation message.” ’144 patent, col. 46 ll. 1-2 (claim 41); see Overend, col. 5 ll. 42-47. Micali shows the “authenticating device of the communications network.” ’144 patent, col. 46 ll. 1-2 (claim 41); see Micali, col. 3 ll. 54-58 (providing for “an electronic communications method between a first and second party, with assistance from at least a trusted party ... in which the first party has a message for the second party”); see also Smith cross-examination, J.A. 838, 1180:17-20 (“Q. And you agree that the Micali reference shows a messaging system where the desire is to authenticate messages between parties that maybe don’t trust each other; right? A. Yes.”). Overend similarly teaches “wherein the authenticating device is configured to: generate a delivery report that indicates a delivery event and a time of the delivery event,” with Micali teaching the authenticating device in the claim element. ’144 patent, col. 46 ll. 13-16; see Overend, col. 5 ll. 42-47; Micali, col. 3 ll. 54-58; see also J.A. 1219, Fig. 7b (Overend teaching a “transfer log” with date/time stamps of transmission and receipt of a file); J.A. 741, 796:9-797:4 (Overend also teaching a “delivery report[,] the delivery event[,] and the time of the delivery event”). The testimony of Dr. Martin Rinard, that “the only limitation that Overend does not disclose is the third-party authenticating device,” and that “Micali discloses the third-party authenticating device missing from Overend” remains undisputed. Dist. Ct. Op. at 429 (characterizing Rinard’s testimony). Applying law and precedent, the combination of Overend and Micali renders claim 41 obvious. First, “when a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result.” KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 416, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). And second, “[w]hen a patent simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious.” Id. at 417, 127 S.Ct. 1727 (internal quotation marks and citation omitted). The Court explained that “a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions.” Id. In light of the evidence, no reasonable jury could have found claim 41 to be non-obvious. There is not substantial evidence that a receipt confirming delivery is not a delivery confirmation message as in the prior art, especially giyen the express teachings of Micali’s authenticating device. A “patent for a combination which only unites old elements with no change in their respective functions ... obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to. skillful men.” Id. at 415-16, 127 S.Ct. 1727 (quoting Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 152-153, 71 S.Ct. 127, 95 L.Ed. 162 (1950)). Thus I must, respectfully, dissent from my colleagues’ ruling sustaining the validity of claim 41. The ’462 Patent On the evidence presented, no reasonable jury should have found the claimed subject matter of the ’462 patent nonobvious. The claims are for a portable telephone handset combined with a docking station, for which the computer functions are provided by the handset. My colleagues agree that the issue is “whether a person of ordinary skill in the art at the time of the ’462 patent would have been motivated to use Smith’s detachable handset with Nelson’s docking display unit.” Maj. Op. 1332. This motivation is provided in the cited references themselves. The ’462 patent explains that its inventors did not invent portable telephone handsets, did not invent computerized portable telephone handsets, and did not invent docking stations for computer-bearing or computer-directed modules. See ’462 patent, col. 1 l. 40-col. 2 1. 8. The ’462 patent further states that “components used in device 10 can be similar to those employed by traditional computing devices, 'communication devices, and entertainment devices.” See ’462 patent, col. 5 ll. 38-40, The combination of a portable telephone with'a dock is shown by Smith, and the combination of a dock with a computer module is shown by Nelson. The combination that is described and claimed in the ’462 patent is a portable telephone having a computer, and when docked, the docking station uses the telephone’s computer. Nelson shows a portable computer, and a docking station that uses the PC’s computer. Smith shows a portable telephone that docks with a docking station that provides the computer module. The ’462 patent shows a portable telephone having a computer, that doeks with a docking station that uses the telephone’s computer. As computer-fitted telephones became available, it was obvious to combine that telephone with the dock of Nelson, recognizing Smith’s combination of telephone and dock. Nelson. discusses the “certain advantages over the other” of portable and desktop PCs, “past” “attempts to combine the functions” of both, and states the “need for a system which provides the advantages of both portable PCs and desktop. PCs.” Col. 1 ll. 5-35. Smith remarks that “[t]he demands of modern .life require ,.. people to carry at least one electronic device to perform their daily work.” Col. 2 ll. 15-18. Smith refers to the “dual problems of mobility and portability associated with using a portable telephone in combination with a portable computer.” Abstract; The ’462 patent, benefítting from the discovery by others of a telephone that is also a portable computer, simply combines this device with a docking station, as shown by Nelson for docking a computer module. The ’462 combination of a portable telephone/computer with a docking' station is the obvious combination of known devices for their known purposes. See, e.g., J.A. 1025 (Motorola’s expert discussing-the advantages and disadvantages of Nelson and Smith, individually, and concluding that “the combination of Nelson and Smith has all' of these advantages without a shortcoming”). The majority observes that the parties’ expert witnesses offered conflicting opinions as to what was obvious, and the majority states that “[t]he jury apparently credited the testimony of IV’s expert over Motorola’s.” Maj. Op. 1332. Perhaps so. However, the issue is not credibility of witnesses; the issue is whether substantial evidence supports the jury’s decision, taking into account the entirety of the record, and evidence that both supports and detracts from the decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The question of obviousness is “whether a person of ordinary skill in the art at the time of the ’462 patent would have been motivated to use Smith’s detachable handset with Nelson’s docking display unit.” Maj. Op. 1332 (internal quotation marks omitted). This ultimate inquiry is a question of law, and requires objective determination. The record does not contain substantial evidence supporting the majority’s conclusion that it would not have been obvious to use the known computerized handset in the known docking station. The combination of the Nelson and Smith references shows every element of the claims at issue in the ’462 patent, used in the same manner, for the same purpose, as in the ’462 patent. See In re Mouttet, 686 F.3d at 1333 (“[Tlhe test for obviousness is what the combined teachings of the references would have suggested to those having ordinary skill in the art.”).. The motivation,to combine the known portable, computerized telephone with the known docking station is provided by the references themselves, as discussed above. The court’s contrary conclusion is not supported'by evidence. Thus I respectfully dissent from the ruling that the '462 patent is not.invalid on the ground of, obviousness. . Intellectual Ventures I, LLC v. Motorola Mobility LLC, 176 F.Supp.3d 405 (D. Del. 2016) ("Dist. Ct. Op.").